**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN (COLUMBUS) DIVISION**

| | |
|---|---|
| Michael Alf, Gary Till, Chris Armstrong, Allan Novakowski, and John Does 93 - 99, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Case: 2:21-cv-02542-MHW-EPD[1] |
| vs. | Judge Michael H. Watson |
| The Ohio State University, | Chief Magistrate Judge Elizabeth P. Deavers |
| Defendant. | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
THE OHIO STATE UNIVERSITY'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT**

On May 17, 2019, The Ohio State University ("OSU") published the Perkins Coie Report ("PC Report"), which revealed the unthinkable: not only had one of its longest-employed doctors preyed on countless young men over the course of his twenty-year tenure, but OSU knew about it, failed to stop it, and, perhaps most horrifying of all, protected the abuser and his legacy while protecting his access to student-victims. ¶ 241-242. Until the publication of the report, no reasonable person could have suspected that OSU facilitated the battery, assault, and rape of its very own students – and then shamefully buried its misdeeds where they lay for twenty more years. ¶ 241-242. The Plaintiffs, who were sexually victimized while attending OSU, only learned the truth when the world did: that they are the victims of OSU's deliberate—and federally actionable—indifference, which placed them at risk of suffering devastating sexual abuse at the hands of an employee who was entrusted with their most intimate medical care. To be sure, OSU tries to deflect its responsibility by blaming the doctor who has long been dead. **But this case is not about Dr. Strauss, it is about OSU.**

---

[1] This case is related to Cases No. 2:18-cv-00692-MHW-EPD, 19-cv-2462-MHW-EPD, 20-cv-3817-MHW-EPD, 19-cv-4746-MHW-EPD, and 18-cv-736-MHW-EPD.

In its Rule 12(b)(6) motion, OSU literally asks the Court to dismiss Plaintiffs' claim based on a waivable affirmative defense, while simultaneously excusing its dismissal request as "not [being] directed toward plaintiffs' claims of injury." (Doc. 9, at 2.) OSU then spends a good deal of its brief quoting from the Complaint a detailed parade of horribles inflicted by Strauss. (Doc. 9 at 8-10.) Indeed, OSU points its 12(b)(6) motion *directly toward plaintiffs' injuries* in a manner calculated to sensationalize them, and to distract the Court from the relevant inquiries here, which are both disputed questions of fact ill-suited for resolution on a motion to dismiss:

1. **Did Plaintiffs' claims only accrue, if ever, at the time of the underlying abuse**: Accepting as true the Complaint's factual allegations, could plaintiffs have known, or should they have known, of both their injury *and OSU's role in causing it* prior to two years before the first filing of the claims?[2]

2. **Are Plaintiffs Entitled to Tolling**: Does the Complaint plausibly allege that equity applies to toll the limitations period here, where strict application of the state statute of limitations would eradicate rights or frustrate policies created by federal law?[3]

The answer to the first question is "No." The facts alleged in the Complaint,[4] as in the related Consolidated Amended Complaint in Case No. 18-692, plausibly establish that, despite repeated notice to appropriate persons about prolific sexual abuse beginning in 1978, OSU refused to take action that would have prevented each Plaintiff's abuse. Rather, OSU actively concealed Strauss's sexual misconduct along with its own role in perpetuating his abuse—and continued to do so long after Strauss left the University.

---

[2] *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001) ("a cause of action accrue[s] under the discovery rule when [a plaintiff] first knew, or in the exercise of reasonable diligence should have known, of **both the injury and its cause**.") (emphasis added); *see also U.S. v. Kubrick,* 444 U.S. 111, 123-24 (1979) (finding that plaintiff's claim accrued when he knew of the injury and its cause); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 470 (6th Cir. 2013) (federal discovery rule "provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, of both the injury and its cause that he or she has been injured *by the conduct of the defendant*.") (internal quotations omitted) (emphasis added).

[3] *Alexander v. Okla.*, 382 F.3d 1206, 1217, n.5 (10th Cir. 2004) (quoting *Rodriguez v. Holmes,* 963 F.2d 799, 805 (5th Cir. 1992) (*citing Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (holding that federal courts should not apply state statute of limitations and tolling rules that are "inconsistent with the federal policy underlying the cause of action under consideration" (quoting *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 465 (1975))).

[4] Plaintiffs refer to the *Alf, et al. v. The Ohio State University* Complaint ("Complaint"), Doc. 1, by paragraph number (¶__); Plaintiffs refer to OSU's Motion to Dismiss as "Doc. 9, at ECF __", pinpointing to the Court's ECF header pagination.

As a result, and as alleged in the Complaint, Plaintiffs did not know and ***could not have known*** **of OSU's**

**role in causing their abuse** until release of the PC Report in May of 2019, or the April 2018 announcement

of an investigation, at the earliest. ¶ 243, 256-268, 425.

Immediately upon learning of OSU's misconduct, the original plaintiff representatives filed their

first Complaint, individually and on behalf of a putative class of survivors, including all Plaintiffs herein.[5]

And, when they learned more, they amended. The individual Plaintiffs herein filed this most recent class

action on behalf of the men who came forward since the filing of the *Garrett, et al.,* Consolidated Class

Action Complaint [Doc. 157 in Case 18-0692] in response to the Court's direction that the parties should

focus on mediation efforts and not amendments to the pleadings.[6] Irrespective of OSU's motion, and its

misplaced focus on the *Alf* filing date, the statute of limitations for the *Alf* plaintiffs is tolled by the filing

in the original *Garrett* Complaint.[7] Because the Title IX claim here is not barred on the face of the

complaint, OSU's motion must be denied.

The answer to the second question is "Yes." OSU's long-term concealment of its own misconduct

creates a basis for tolling in this case. At the very least, there is a triable issue of fact as to accrual of

Plaintiffs' Title IX claim. OSU's motion must be denied on this ground as well.

Dismissal at this stage based on contested limitations periods is disfavored.[8] A statute of limitations

---

[5] Doc.1 in 18-0692, filed July 16, 2018.

[6] After abiding the Court's direction to the parties to focus on mediation and not amendments of the pleadings, Plaintiffs here were compelled to file a new class action, to include the most recent identified plaintiff class representatives following the breakdown of mediation with OSU. [Doc. 137 in 18-0692].

[7] Under *American Pipe*, the operative date of the filing of the Title IX claims for each and every member of the class (named and unnamed) is July 16, 2018, the date of the original class action complaint. The filing tolls the statute of limitations until class certification is denied. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974) (footnote omitted) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 346–47 (1983) (extending doctrine, holding "all members of the putative class [may] file individual actions in the event that class certification is denied, provided ... that those actions are instituted within the time that remains on the limitations period."); *accord In re Vertrue Inc. Mktg. & Sales Practices Litig.,* 719 F.3d 474, 478 (6th Cir. 2013). OSU's repeated reference to the dates of various filings and amendments is irrelevant. *See* Doc. 162, at ECF 3, 11, & 18.

[8] *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank,* 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("Ordinarily, dismissing claims as untimely under Rule 12(b)(6) is disfavored because plaintiffs have no duty to plead facts negating . . . the statute of limitations.").

dismissal at the 12(b)(6) stage is only appropriate if the complaint "shows conclusively on its face that the action is indeed time-barred."[9] Here, accepting the well-pleaded facts as true,[10] OSU's motion fails to meet this high bar. Plaintiffs only recently discovered—or even could have discovered—OSU's role in causing their injuries. ***Had OSU's misconduct been discoverable any earlier to the average plaintiff victim, why would a year-long, multi-million dollar independent investigation have been necessary?***

In its motion, OSU does not challenge the sufficiency or plausibility of Plaintiffs' Title IX claims. Nor does OSU deny that it is liable under a theory of deliberate indifference and heightened risk. In fact, OSU avoids *any* discussion of the elements of the claim which Plaintiffs assert. OSU focuses instead, and exclusively, on whether the claim, classwide, is barred by the two-year statute of limitation *based on Strauss's actions*. But Plaintiffs' claims are against OSU, not Strauss. OSU actively ignored the tragic victimization of its athletes for decades, and then successfully concealed its own involvement until very recently. OSU cannot now hide behind the statute of limitations related to the sexual misconduct of its employee; it must answer for its own misconduct under Title IX. The allegations in the Complaint demonstrate that Plaintiffs' Title IX claims against OSU are timely or, at the very least, the allegations create a factual dispute regarding accrual that must be resolved by a trier of fact. For both reasons, this Court should deny OSU's motion to dismiss.

## LEGAL STANDARDS

Plausibility requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[11] OSU improperly asks the Court to draw reasonable inferences in *its* favor rather than to view the Complaint in the light most favorable to Plaintiffs. But the maxims of Rule 12(b)(6) are clear:

---

[9] *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012).

[10] *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11] Fed. R. Civ. P. 8(a); *see Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2019 WL 7482134, at *4 & n.6 (S.D. Ohio Sept. 26, 2019) (Watson, J.).

1.      First, the Court must accept all of the plaintiffs' factual allegations as true.[12]

2.      Second, the Court must draw all reasonable inferences in the plaintiffs' favor.[13]

3.      Third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief.[14]

4.      The Court "disregards all evidence favorable to the moving party that the jury would not be required to believe."[15]

5.      "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds."[16]

6.      A Rule 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations,[17] and dismissing claims as untimely at the motion to dismiss stage is "disfavored."[18]

7.      Only when the complaint "conclusively" or "affirmatively" shows on its face that relief is time-barred will it be subject to dismissal under Rule 12(b)(6).[19]

8.      Plaintiffs have no duty to plead facts negating an affirmative defense.[20]

9.      To establish that the statute of limitations has run, defendant must establish when the plaintiff's claims accrued.[21]

10.     Questions regarding accrual and tolling are fact questions not appropriate for resolution at the 12(b)(6) stage.[22]

---

[12] *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (quoting *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

[13] *Id.*

[14] *Id.* (citing *Iqbal*, 556 U.S. 662, at 679 (2009)).

[15] *Karpik*, 2019 WL 7482134, at *4.

[16] *Baum*, 903 F.3d at 581.

[17] *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir. 2012).

[18] *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank,* 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("Ordinarily, dismissing claims as untimely under Rule 12(b)(6) is disfavored because plaintiffs have no duty to plead facts negating . . . the statute of limitations.").

[19] *Cataldo*, 676 F.3d at 547; *Rauch v. Day & Night Manuf. Corp*., 576 F.2d 697, 702 (6th Cir. 1978).

[20] *Id.*

[21] *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 625 (6th Cir. 2017) ("It was [the defendant's] burden to show that the [plaintiff] should have discovered his fraudulent conduct before the relevant time period, not the [plaintiff's] burden to plead around the possibility.").

[22] "[T]he determination of when a cause of action accrues is to be decided by the trier of fact." *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc*., 933 F. Supp. 2d 974, 1016 (S.D. Ohio 2013); *see also In re Arctic Express Inc.*, 636 F.3d 781, 802 (6th Cir. 2011).

## ARGUMENTS AND AUTHORITY

### I.    Plaintiffs Have Sufficiently Stated a Title IX Claim Against OSU.

In its motion, OSU does not challenge the sufficiency or plausibility of Plaintiffs' Title IX claims. As a recipient of federal funds, OSU does not dispute that it is subject to Title IX, a provision which prohibits sex discrimination, including sexual abuse and sexual harassment.[23] *See* ¶¶ 50, 393-399. All Plaintiffs in this case assert Title IX violations under pre-assault and heightened-risk theories, alleging that OSU created—and was deliberately indifferent to—a sexually hostile culture in its athletic and student health programs, substantially heightening the risk that the plaintiffs and other students would be sexually harassed or abused, *see, e.g.*, ¶¶ 10-11, 20, 34, 61-74, 125-133, 364-379, 406, 409 (heightened risk claim). Similarly, all of the Plaintiffs in this case allege that OSU could have prevented their abuse by Strauss had OSU acted on students' prior complaints about his conduct. ¶¶ 10-11, 16, 20, 33, 52-61, 74, 105-108, 125-140, 230, 379, 408-423 (pre-assault claim).

In support of Plaintiffs' Title IX claim, they allege: (1) OSU receives federal funds and is subject to Title IX, *see, e.g.*, ¶¶ 50, 393-399; (2) Plaintiffs were subjected to harassment and/or abuse on the basis of their sex by the intentional conduct of an OSU employee, *see, e.g.*, ¶¶ 3, 16, 21-23, 33-48, 51, 213, 402; (3) appropriate persons at OSU had actual notice of allegations of harassment, *see, e.g.,* ¶¶  103, 106-108, 109-110, 112-118, 122, 210, 280, 284-296, 405-407 (athletic directors, head team physicians, assistant athletic directors, team physicians, coaches, trainers, and student health officials, including the Director of Student Health); (4) OSU's response was unreasonable under the circumstances, amounting to "deliberate indifference," *see, e.g.*, ¶¶ 4-5, 11-13, 20, 25, 52-53, 66-56, 59-64, 103, 105-108, 112-113, 114-117, 125-132, 157, 297, 410,  415, 417; and (5) the harassment or abuse was so severe, pervasive, and objectively offensive that it effectively deprived Plaintiffs of access to educational opportunities or benefits. *See* ¶¶ 16, 17, 33, 214, 420.

Significantly, OSU does not dispute the sufficiency of the class members' allegations supporting

---

[23] *See generally*, 20 U.S.C. §§ 1681, *et seq.*

any element of the Title IX claim—only that it is time-barred.

## II. Plaintiffs' Title IX Claim Against OSU is Not Time-Barred on its Face.

### A. The Claims Herein Were First Filed in *Garrett*, and this Case should be Consolidated with The Consolidated Cases in *Garrett* Pursuant to Rule 42.

As a practical, threshold matter, Plaintiffs pause to untangle a repeated and confusing snarl OSU has injected into these cases. In trying to tether the claims of the eleven plaintiffs herein to the date they put their names on a pleading as class representatives, OSU portrays its misunderstanding of the class action mechanism. On July 16, 2018, undersigned counsel filed a Class Action Complaint, individually and on behalf of a putative class of all survivors of Strauss. [24] The class includes the eleven Plaintiffs named here, who subsequently came forward wanting to act as class representatives. After rounds of consolidations resulting in the Class Action complaint filed as Doc. 157 in the *Garrett* case, 18-0692, this Court directed the parties to focus on mediation efforts and dissuaded further motions to amend the pleadings. [25] As a purely procedural matter, and as Plaintiffs set forth in the parties' Rule 26(f) Report, this case should be consolidated with the *Garrett* case pursuant to Rule 42, because they involve common questions of law and fact – indeed, the same facts, the same claim, the same parties, and the same counsel. Plaintiffs intend to file a motion to this end. But for purposes of OSU's dismissal motion, this Court should disregard the misplaced focus on the May 14, 2021 filing date, because the statute of limitations for the *Alf* plaintiffs was tolled by the filing in the original *Garrett* Complaint. [26] And in suggesting these claims don't relate back to

---

[24] Doc.1 in 18-0692, filed July 16, 2018.

[25] After abiding the Court's direction to the parties to focus on mediation and not amendments of the pleadings, Plaintiffs here were forced to file a new class action, to include the most recent identified plaintiff class representatives following the breakdown of mediation with OSU. [Doc. 137 in 18-0692].

[26] Under *American Pipe*, the operative date of the filing of the Title IX claims for each and every member of the class (named and unnamed) is July 16, 2018, the date of the original class action complaint. The filing tolls the statute of limitations until class certification is denied. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974) (footnote omitted) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 346–47 (1983) (extending doctrine, holding "all members of the putative class [may] file individual actions in the event that class certification is denied, provided ... that those actions are instituted within the time that remains on the limitations period."); *accord In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 478 (6th Cir. 2013).

the filing of the Garrett class action, OSU asks the Court to ignore black letter law, including basic principles of class action tolling under *American Pipe*.[27] Regardless of whether or not each Plaintiff discovered their actionable claims against OSU when a whistleblower publicly revealed his abuse by Strauss in early 2018, or when the Perkins Coie report was released in May of 2019, all Strauss Survivors had a seat at the table in this case on July 16, 2018 by virtue of the filing of the original Class Action Complaint in Case No. 18-cv-00692[28], on behalf of John Does 1-4, and a nationwide class of similarly situated OSU male students who were examined by Dr. Richard Strauss or who participated in varsity athletics and utilized locker rooms, showers and/or saunas Larkins Hall between 1979-1998.[29] The Supreme Court's *American Pipe* tolling doctrine preserves all class members' claims until certification is decided.

And viewing the Complaint's allegations as true and drawing reasonable inferences in Plaintiffs' favor, as the Court must, the detailed allegations of fact—and evidence from the PC Report—do not conclusively bar all Strauss survivors' claims as untimely when the *Garrett* complaint was filed in July 2018. To the contrary, the Complaint plausibly alleges that only in May of 2019, did the PC Report reveal that more than 67 people at OSU knew of Strauss's sexual harassment and abuse of students. ¶¶ 280-294. Prior to this disclosure and the related media reports that preceded it, Plaintiffs had no way of knowing that, rather than taking immediate appropriate action, OSU rebuffed, ignored, and concealed these complaints— thereby creating and perpetuating a sexually hostile culture in its athletic and student health programs that allowed Strauss to roam freely, preying on students, and significantly increasing the risk that Plaintiffs would be harassed, molested, and raped. ¶¶ 10, 11, 20, 34, 61-74, 112, 114-120, 125-140, 153-157, 174-175, 181, 183, 374-379, 406, 409, 422.  Plaintiffs also could not have known, until within two years of the filing of the original Complaint, that Strauss's abuse was preventable *if only* OSU had acted on students' earlier complaints, instead of allowing Strauss to continue seeing students—without ever so much as saying

---

[27] *Supra* note 7.
[28] Now captioned *Garrett, et al v. The Ohio State University.*
[29] The Supreme Court held "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

a word to them—and then *protecting Strauss* and his legacy by covering up OSU's failures. ¶¶ *Id.*; *see also* ¶¶ 16, 33, 52-61, 105-108, 146-148, 271, 379, 408-423, 425.

### B. Courts should not "Borrow" from State Law to limit a Federal Claim

Title IX is a federal law. OSU agrees that *federal law* determines when a Title IX claim accrues and whether equity justifies tolling the limitations period.[30] Title IX contains no express limitations period. In such circumstances, courts have borrowed state personal injury limitations periods.[31] In Ohio, the limitations period for personal injury is two years.[32] This case presents an opportunity for this Court to discuss whether this borrowing construct survives constitutional due process and equal protection challenge. The U.S. Supreme Court has suggested that such borrowing should be done with caution. In *DelCostello v. Int'l Bhd. of Teamsters*, it held that the Court "has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. 'Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.'"[33] Indeed, there is a fundamental fairness problem with applying state-specific limitations periods to a national law, in such a manner that one individual's federal claim would be barred, while someone else's—who was abused in another state—can proceed.

Courts recognize a private cause of action under Title IX because recipients of federal funds must be held accountable for placing students at a *heightened risk* of suffering abuse at the hands of the employees of those institutions, and must be held accountable for demonstrating *deliberate indifference* to such abuse when it occurs. The federal private remedy available to compensate victims of this very type of

---

[30] *See, e.g.*, Doc. 9, at ECF 6 ("federal law determines when a Title IX claim accrues").
[31] *Lillard v. Shelby Cty. Bd. of Ed.*, 76 F.3d 716, 728-29 (6th Cir 1996). Although Plaintiffs acknowledge this borrowing construct, Plaintiffs disagree with its application and preserve for appeal a procedural and substantive challenge to the application of a borrowed state statute of limitation to a federal law, particularly under the circumstances here.
[32] *Id.*; Ohio Rev. Code § 2305.10(A); *accord Lillard*, 76 F.3d at 729.
[33] 462 U.S. 151, 161 (1983) (citation omitted).

institutional misconduct should not be subject to the borrowing of a state-enacted limitation period for personal injury. Application of arbitrary, state-specific limitations periods both "frustrates" and "interferes with" the implementation of the national policies espoused in Title IX.[34]

Had OSU done "the right thing" at any time after receiving the first student complaint in 1978, thousands of young students'—now adults'—lives would not have been destroyed. Instead, OSU ignored and repressed complaints, so that no reasonable individual student would have suspected the extent of OSU's knowledge or its deliberate indifference to the same. Having failed its students, in violation of Title IX, for so long, OSU cannot now destroy their claims because it successfully concealed its own misconduct long enough for the statute of limitations to run on its employee's offenses. OSU should be estopped, as a matter of fundamental fairness, from asserting any state-specific statute of limitation as a defense to the Title IX claim herein.

### C. The Federal Discovery Rule Applies to Title IX Claims.

Notwithstanding the foregoing, and assuming that this Court applies the borrowing construct to import Ohio's two-year statute of limitations for personal injury, the determination of when that limitation period begins to run is still a contested issue – *and cannot be conclusively determined from the face of the complaint*. OSU agrees that *federal law* determines when a Title IX claim accrues and whether equity justifies tolling the limitations period.[35] The federal discovery rule "governs when a claim accrues," and "incorporates the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action."[36] In railing against the discovery rule, OSU relies on distinguishable, inapposite, and/or unpersuasive case law while ignoring the most recent, on-point decisions and underlying rationale.[37]According to the Sixth Circuit, "a cause of action accrue[s] under the discovery rule when [a plaintiff] first knew, or in the exercise of reasonable diligence should have known, of **both the injury and**

---

[34] *DelCostello,* 462 U.S. at 161.
[35] *See, e.g.*, Doc. 9, at ECF 6 ("federal law determines when a Title IX claim accrues").
[36] *Bay Area Laundry & Dry Cleaning Pens. Tr. Fund v. Ferbar Corp.,* 522 U.S. 192, 201 (1997) (internal quotation marks omitted).
[37] See Doc. 9, ECF 12-16.

*its cause*."[38] The inquiry is objective and the court looks to "what event should have alerted the typical lay person to protect his or her rights."[39] And even if a claim has accrued, "federal courts possess the power to use equitable principles to fashion their own tolling provisions in exceptional situations in which state statutes of limitations eradicate rights or frustrate policies created by federal law."[40]

OSU spills much ink disputing that the discovery rule applies, but its reliance on dicta in *Rotkiske v. Klemm* is misplaced. Unlike the present case, *Rotkiske* involved an issue of statutory interpretation of a federal law – the Fair Debt Collection Practices Act – that did contain a statute of limitations provision, which set accrual of claims at the time a "violation occurs."[41] The Supreme Court actually concluded that, where Congress has included a "violation occurs" provision, courts should not "second guess" that clear legislative choice by applying the discovery rule.[42] OSU would have this Court stretch *Rotkiske* far beyond its holding; all that that can be said of *Rotkiske* is that it *may* stand for the rejection of the discovery rule where an express alternative exists for determining accrual of a cause of action. OSU compounds its invitation to error by citing a concurring opinion in the Sixth Circuit's decision in *Everly*.[43] That decision addressed a summary judgment ruling arising under the Copyright Act, which also contains an express statute of limitations.[44]

Read carefully, the rationale of *Rotkiske* invites the opportunity to apply the discovery rule where,

---

[38] *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001) (emphasis added); *see also U.S. v. Kubrick,* 444 U.S. 111, 123-24 (1979) (finding that plaintiff's claim accrued when he knew of the injury and its cause); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 470 (6th Cir. 2013) (federal discovery rule "provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, of both the injury and its cause that he or she has been injured *by the conduct of the defendant*.") (internal quotations omitted) (emphasis added).

[39] *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016) (quoting *Hughes v. Vanderbilt,* 215 F.3d 543, 548 (6th Cir. 2000)).

[40] *Alexander v. Okla.*, 382 F.3d 1206, 1217, n.5 (10th Cir. 2004) (quoting *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir. 1992) (*citing Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (holding that federal courts should not apply state statute of limitations and tolling rules that are "inconsistent with the federal policy underlying the cause of action under consideration" (quoting *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 465 (1975))).

[41] *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019).

[42] *Id.* at 361.

[43] Doc. 9, at 6-7 (citing *Everly v. Everly*, 958 F.3d 442, 460-61 (6th Cir. 2020) (Murphy, J., concurring).

[44] *Id.* at 450. Furthermore, the point of accrual for a violation (i.e., copyright infringement) was and is the subject of an ongoing circuit split.

as here, no statutory directive exists regarding the accrual date of a plaintiff's claim.[45] And because Title IX is "silent on the issue" of a claim's accrual,[46] Plaintiffs' claim in the case at bar is precisely the type of situation where a court *should* read in the federal discovery rule.[47]

According to the Sixth Circuit, "a cause of action accrue[s] under the discovery rule when [a plaintiff] first knew, or in the exercise of reasonable diligence should have known, of ***both the injury and its cause***."[48] The inquiry is objective and the court looks to "what event should have alerted the typical lay person to protect his or her rights."[49] And even if a claim has accrued, "federal courts possess the power to use equitable principles to fashion their own tolling provisions in exceptional situations in which state statutes of limitations eradicate rights or frustrate policies created by federal law."[50]

OSU overreaches in suggesting that, instead, the Title IX claims here accrued at the time of the abuse itself. But the relevant inquiry on accrual centers on when the Plaintiffs could have first known that they were injured by OSU, i.e. that OSU played an actionable role in causing their abuse. Viewing the Complaint's allegations as true and drawing reasonable inferences in Plaintiffs' favor, as the Court must, the detailed allegations of fact—and evidence from the Perkins Coie Report—establish that no matter what inquiry Plaintiffs made at the time of their abuse or in the decades after, they would have uncovered

---

[45] *See, e.g., Rotkiske*, 140 S. Ct. at 363 (Ginsberg, J., dissenting) (noting that, "[l]ike the general discovery rule that lower courts have 'appl[ied] when a statute is silent on the issue' of a claim's accrual, the fraud-based discovery rule operates as a statutory presumption 'read into every federal statute of limitation.'") (citations omitted).

[46] *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

[47] *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

[48] *Fonseca v. Consol. Rail Corp*., 246 F.3d 585, 590 (6th Cir. 2001) (emphasis added); *see also U.S. v. Kubrick*, 444 U.S. 111, 123-24 (1979) (finding that plaintiff's claim accrued when he knew of the injury and its cause); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 470 (6th Cir. 2013) (federal discovery rule "provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, of both the injury and its cause that he or she has been injured *by the conduct of the defendant*.") (internal quotations omitted) (emphasis added).

[49] *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016) (quoting *Hughes v. Vanderbilt,* 215 F.3d 543, 548 (6th Cir. 2000)).

[50] *Alexander v. Okla.*, 382 F.3d 1206, 1217, n.5 (10th Cir. 2004) (quoting *Rodriguez v. Holmes,* 963 F.2d 799, 805 (5th Cir. 1992) (*citing Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (holding that federal courts should not apply state statute of limitations and tolling rules that are "inconsistent with the federal policy underlying the cause of action under consideration" (quoting *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 465 (1975))).

nothing—OSU kept a lid on the truth about Strauss, and effectively hid that truth, even from itself. ¶¶ 5-11, 16, 20, 33, 34, 52-74, 104-108, 112-119, 125-140, 146-148, 153-157, 174-175, 181-184, 280-297, 364-379, 406, 408-428.[51]

But despite clear authority supporting Plaintiffs' position, OSU insists that this Court should rule that Plaintiffs' Title IX claims for *OSU's* deliberate indifference arose when Strauss abused them (and before Plaintiffs could have had discovered OSU's misconduct). But OSU's cases do not support this conclusion: most do not discuss accrual at all and none preclude delayed accrual, as pleaded.[52] First, *Gilley*, where the Sixth Circuit affirmed that plaintiff had not adequately pleaded tolling of her Title IX claim under Kentucky's fraudulent concealment statute, is simply inapposite; it does not apply because OSU kept Plaintiffs from knowing about its cover-up.[53]

Next, although *Adams* involved a motion to dismiss, it did not involve a statute of limitations challenge. Instead, defendants challenged sufficiency of the "notice" element of the Title IX cause of action—not notice of the claim itself.[54] On that score, the *Adams* court rejected defendant's argument that factual allegations of abuse that were remote in time could not constitute notice as required by Title IX.[55]

---

[51] As to OSU students, Dr. Ted Grace (Strauss's supervisor) admitted: "Q. Is there any way any Ohio State student could have known that their university failed on the job for 20 years to get rid of this sexual predator? . . . . A. I don't know of any way." ¶ 6. Another Strauss supervisor, Dr. Roger Miller, admitted he first learned of reports against Strauss by reading the PC Report, and agreed: "Q. And is there any way OSU – any OSU student could have known that Dr. Strauss was a sexual predator against students for over 20 – for approximately 20 years before OSU got rid of him? A. I don't believe they would have known." ¶ 7.

[52] Doc. 162, at ECF 8-9.

[53] Unlike the Plaintiff in *Gilley*, Plaintiffs in this matter were not "aware of facts that should have aroused [their] suspicion" of the claims against OSU at the time Strauss abused them, thus, Plaintiffs had no reason to investigate earlier because either they knew Strauss had been reported and the University reaffirmed him or they had no reason to think that their abuse was anything but an isolated incident. 572 F. App'x. at 308. Importantly, had they investigated, they would have discovered nothing. Indeed, *Gilley* actually favors plaintiffs here, by recognizing that equitable tolling is appropriate where there's an "intent to conceal or an active effort to mislead." *Id.*

[54] As noted at *supra* p. 7, to make a prima facie case under Title IX a plaintiff must show, among other elements, that there was actual notice of the harassment or abuse to an appropriate person at the institution. This is a distinct concept from 'inquiry notice' to Plaintiffs regarding their injury and its cause that trigger the running of the statute of limitations.

[55] *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 997, 998 (S.D. Ohio 2018), ("the mere fact that the previous allegations are distant in time will not bar Plaintiffs' claims from continuing at this stage").

In *Giffin*, the district court granted dismissal—not because plaintiffs were time-barred but because they failed to state a claim under Title IX. In an unpublished opinion, the Sixth Circuit explained that, because Title IX was not triggered by a failure to promulgate a "consensual sexual relations" policy, the policy's "absence [could not] toll the running of the two-year period."[56]

Similarly, *Bannister* is inapplicable. The *Bannister* plaintiffs were aware school officials were acting in violation of Title IX, based on Defendants' words and behaviors, resulting in harm to their son, yet failed to bring timely claims and the belated claim consisted of two sentences, which the Court described as making it "impossible to discern which type of claim under Title IX Plaintiffs attempt to assert and which allegations support such a claim." *Bannister by Bannister v. Knox Cty. Bd. of Educ.*, No. 3:18-CV-188, 2021 WL 2685193, at *7 (E.D. Tenn. June 30, 2021). Those facts stand in stark contrast to the facts here, pled into 428 paragraphs making clear that Plaintiffs had no way of knowing, and were in fact prevented from knowing that OSU was in violation of Title IX until years after their injury by Strauss.

*Forrester,* an out-of-district case, involved multiple young women who were abused by their music teacher, and who explicitly reported their sexual abuse and harassment directly to the school principal and other decisionmakers, but sat on their rights while the school took no action and their abuser to remain employed. The Court dismissed the plaintiffs' untimely filing.[57] Unlike the plaintiffs here, the *Forrester* Plaintiffs had direct knowledge about what the institution that employed their abuser knew, and how the institution responded to the reports of abuse. The Plaintiffs in this case did not know, had no reason to investigate, and could not have been aware of the collective knowledge that OSU had received about Strauss because it was buried. If the discovery rule applies in any case, it should apply here. As soon as Plaintiffs discovered OSU's role and the existence of a Title IX claim against it, Plaintiffs filed their case against OSU.

In contrast to the out-of-district *Bowling* case, Plaintiffs here assert facts that delay accrual, assert a sexually hostile environment and plead a continuing violation under Title IX. ¶¶ 21-26, 431-36. *Bowling*,

---

[56] *Giffin v. Case Western Res. Univ.*, No. 98-3267, 1999 WL 238669 (6th Cir. Apr. 13, 1999).
[57] *Forrester v. Clarenceville Sch. Dist.*, No. 20-12727, 2021 WL 1812700 (E.D. Mich. May 6, 2021).

although not from this district, suggests that a continuing violation theory is viable and survives dismissal.[58]

Finally, the out-of-district *Anderson* decision cites Sixth Circuit cases on accrual, noting that courts "ordinarily . . . apply the 'discovery rule' to establish the date on which the statute of limitations began to run."[59] Unlike Plaintiffs' Complaint in the instant case, the *Anderson* plaintiffs' bare-bones allegations made plain that their Title IX claim was out of time.[60] The *Anderson* court rejected plaintiffs' tolling arguments because the allegations, unlike here, established that the plaintiffs were sufficiently "aware of facts that should have aroused their suspicion of the claims against Defendants."[61] But here, by OSU's design, Plaintiffs could have had no idea of their abuse by OSU. Indeed, even OSU's current administration was unaware of the scope and contours of their predecessors' grisly wrongdoing. Had they known, there would have been no need to hire Perkins Coie to review over 800 boxes of hardcopy records, or interview over 500 witnesses to find out what happened.[62]

In short, none of the seven cases OSU relies on involved application of the federal discovery rule, which is invoked in the Complaint, supported by well-pleaded allegations of fact, and is at play here. And because a dispute over a claim's accrual date is a classic factual dispute, the motion to dismiss should be

---

[58] *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) (finding the "allegations show that [continuing violation doctrine] does not apply"). The Complaint's allegations here, however, establish OSU's deliberately indifferent conduct (in violation of Title IX) was a continuing violation from 1978 to at least 2018. ¶¶ 5, 11, 16, 20, 422-423, 431-439. Even OSU's too-little, too-late conduct in announcing and funding an investigation fails to constitute the remediation required by Title IX. *See Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260-61 (6th Cir. 2000) ("[W]here a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances."). OSU's duty to act was triggered when it was first alerted to the possibility of sexual assault by Strauss. But OSU refused to take action, was deliberately indifferent to continued reports from male students and athletes about Strauss's misconduct, concealed these reports, condoned the sexually hostile environment in which Strauss thrived, and perpetuated a campus culture of deliberate indifference to student safety, which heightened the risk that plaintiffs would be abused, and they were abused. *See generally*, Doc. 157; *Gebser* v. *Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (Deliberate indifference presupposes that the school knows of a Title IX violation, but it "refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation."); *see also Allen*, 913 F. Supp. 2d at 505.

[59] *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003), additional citations omitted).

[60] In fact, the plaintiffs in that case offered to withdraw their federal claims entirely in order to be remanded to state court but ended up seeking to amend to avoid dismissal with prejudice.

[61] *Id*. at 671.

[62] PC Report at 17-18.

denied.[63]

### D. Inherently undiscoverable Title IX claims don't accrue until a reasonable person knows or should have known of his or her injury *and the injury's cause.*

Under the federal discovery rule, as applied in the Sixth Circuit, "the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both (1) his injury and (2) *the cause of that injury*."[64] Recently, in a similar group of cases, the Western District of Texas denied motions to dismiss former students' Title IX heightened risk claims against Baylor University pursuant to the discovery rule and fraudulent concealment doctrines. Based on the complaints, the court concluded it was plausible that the claims accrued not at the time each plaintiff was assaulted by a Baylor football player, but *on the date that an independent external report regarding the University's institutional response to Title IX was released.*[65] Significant to the court in those cases were allegations that, due to active concealment, the pervasive failings of the university, which, like here, caused the

---

[63] "[T]he determination of when a cause of action accrues is to be decided by the trier of fact." *Kehoe Component Sales Inc.*, 933 F. Supp. 2d at 1016 (citation omitted).

[64] *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) (emphasis added); *Owner Operator Indep. Drivers Ass'n*, 540 F. Supp. 2d at 932 (applying two pronged test); *see also Kubrick*, 444 U.S. at 122; *Tackett v. Marion Cty. Fair Bd.*, 272 F. Supp. 2d 686, 689 (6th Cir. 2003) (applying *Kubrick's* two-pronged inquiry to civil rights claims).

[65] *See Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 900–01 (W.D. Tex. 2019):
Although Lozano was aware of the existence of an injury when Chafin assaulted her in March and April 2014, it is not evident from the complaint that Lozano was aware of facts that would cause a reasonable person to conclude that there was a causal connection between her assaults and the conduct of Baylor staff and officials, or to seek professional advice on this question. She alleges that at the time of her assaults, "Lozano was unaware of Baylor's pervasive failings ... [in] response to a known issue of sexual misconduct and domestic violence within its football program dating back several years prior to Lozano's assault." [Record citation omitted.] She alleges that she "could not with reasonable diligence, have learned this information independently" until the Pepper Hamilton Findings of Fact were published on May 26, 2016. [Record citation omitted.] She also alleges that "Baylor engaged in a practice of failing to address and actively concealing from the public, specific instances of violence and sexual violence committed by its football players." In other words, the nature of her injury may have been inherently undiscoverable at the time of her assaults, and could not be discovered until the Pepper Hamilton Findings of Fact.
*See also Doe 12 v. Baylor Univ.*, 336 F. Supp. 2d 763 (W.D. Tex. 2018); *Hernandez* v. *Baylor Univ.*, 274 F. Supp. 3d 602, 617 (W.D. Tex. 2017) (denying motions to dismiss official policy/heightened risk claims based on a statute of limitations defense, holding that, based on allegations, plaintiff "had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault"); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017) (same).

plaintiff's injury, were "inherently undiscoverable" at the time of her assaults.[66]

In this case, the facts alleged in the Complaint lead to the same sensible conclusion:

- OSU legitimized Strauss's conduct as ordinary medical care, such as by ignoring, rebuffing, or joking about student complaints;

- From 1978 until 1996, OSU failed to discipline or sanction Strauss at all;

- Even after terminating Strauss's ability to see students in the Athletic Department and Student Health "Men's Clinic" in 1996, OSU allowed him to continue teaching and to open a "Men's Clinic" off campus that was advertised to OSU students in the school newspaper;

- OSU either failed to investigate or elevate numerous complaints of sexual abuse by Strauss;

- OSU either failed to maintain or hid records of student complaints about Strauss's abuse;

- OSU failed to inform any of its students, and a number of its staff members, about Strauss's abuse until 2018 when it publicized the launch of an independent private investigation into its former doctor;

- OSU failed to investigate its own enabling of Strauss and concealment of its failures until the PC Report unearthed and confirmed it in 2019. ¶ 422.

Many Plaintiffs (indeed, all the non-athlete Plaintiffs) thought they were the only ones abused by Strauss. ¶ 258. Believing their experience to be an isolated event, they had no reason to suspect that OSU played or would play an active role in perpetuating a culture of deliberate indifference to Strauss's abuses, ignoring or concealing prior reports that heightened the risk that they—and others—would be abused. ¶¶ 145-166, 170-172, 258.

Many athlete-Plaintiffs who were privy to locker room banter about Strauss reasonably assumed that, since others had had similar experiences (and complained to coaches, trainers, and others) yet saw that nothing was done, the conduct was "just what you had to go through to be in a big university." ¶¶ 63, 66-74, 95, 109, 110, 121. OSU reinforced that belief by continuing to feed students to Strauss for mandatory annual physicals that students were required to undergo to participate in athletics and to maintain

---

[66] *See, e.g.*, *Lozano*, 408 F. Supp. 3d 861; *see also Jameson v. Univ. of Idaho*, No. 18-cv-00451-DCN, 2019 WL 5606828, at *7-8 (D. Idaho Oct. 30, 2019) (although assault occurred and plaintiff reported it in 2013, Title IX heightened-risk claim against the UI did not accrue until 2018 when an "Independent Report" of UI's handling of Title IX cases revealed that the UI had failed to investigate two prior complaints against the plaintiff's abuser).

scholarships, ¶¶ 62, 77, 86-88, 96-98; by blessing his services at the "Men's Clinic" on campus and off, ¶¶ 149-152, 158, 161; and by gilding his reputation upon retirement by bestowing him with emeritus status. ¶¶ 58, 87, 176-180.

In addition to normalizing Strauss's behavior, OSU actively concealed its own pervasive failure to respond to reports and complaints of abuse. ¶¶ 107, 112, 114-119, 126-131, 135-140, 153-157, 174-175, 181, 183, 184.  The Complaint in this case alleges that Plaintiffs had no reason to suspect or further "investigate" any claims regarding OSU's actions—or lack thereof—at the time of their abuse or at any time afterward, until at least the Spring 2018. ¶¶ 257-268. The Complaint also alleges that any investigation which Plaintiffs might have undertaken would have been futile, given that—despite appropriate people having had actual knowledge—athletic directors, head coaches, directors of medicine, and other physicians failed to escalate or share complaints, to inform others, to inquire, to report, or even to discipline Strauss. ¶¶ 103, 126-131, 145-148, 261, 334-342, 345-352.

Plaintiffs did not know and could not have known that OSU had received multiple credible complaints over a span of twenty years about Strauss and yet not only failed to take reasonable action, but also actively concealed these complaints and protected Strauss's legacy until news broke in Spring 2018. At that time, OSU retained Perkins Coie to investigate and, when it published its Report the following May, survivors began learning about each other's stories. ¶¶ 256-268. Even OSU's own PC Report describes an "awakening" for many survivors and their loved ones, ¶ 256, who finally "connected all the dots" back to OSU. ¶ 320. As the Sixth Circuit has recognized, motions to dismiss on statute of limitations grounds are rarely granted, since what each plaintiff knew—and what a reasonable plaintiff should have known—are "factual question[s]" ordinarily "reserved for the jury."[67] Based on the federal accrual or discovery rule, a jury could find that Plaintiffs' Title IX claims did not accrue until the PC Report was published, or, at the earliest, in April 2018 when the PC investigation was initiated – still well within two years of the first filing of the claims Plaintiffs' put their names on here.

---

[67] *In re Arctic Express Inc.*, 636 F.3d 781, 802 (6th Cir. 2011).

18

**E. The Complaint's allegations warrant equitable tolling of the statute of limitations under the doctrine of fraudulent concealment.**

It is well-settled that fraudulent concealment "'toll[s] the running of the applicable limitations period when the defendant takes steps beyond the challenged conduct itself to conceal that conduct from the plaintiff.'"[68] So, even if Plaintiffs' claims against OSU for its role in causing their abuse were tied to the abusive acts themselves, the statute of limitations should equitably toll because of OSU's concealment of Strauss's abuse as well as OSU's role in facilitating his abuse.

Equitable tolling applies "where there is some conduct of the adverse party [that] excludes suspicion and prevents inquiry."[69] "[A] plaintiff must show that the defendant engaged in a course of conduct to conceal evidence of the alleged wrongdoing, and that plaintiff, despite the exercise of due diligence, failed to discover the facts supporting the claim."[70] Plaintiffs have alleged such facts, and the PC Report proves them. Despite its heavy reliance (albeit misplaced) on *Rotkiske* in regard to the discovery rule, OSU fails to mention the *Rotkiske* Court's treatment of equitable tolling – even when Congress has chosen a method of accrual – under the fraudulent concealment doctrine. Indeed the *Rotkiske* Court mused that this was a viable theory for tolling, precluded only because it had not been preserved. *Id*. at 361. As in the *Baylor* cases, this Court should conclude that the Complaint's allegations invoke an estoppel effect.[71]

**III. Punitive Damages are Available for OSU's Egregious Violations of Title IX.**

Contrary to OSU's broad statement dismissing the availability of punitive damages in this case, neither the Supreme Court nor the Sixth Circuit have addressed the availability of punitive damages under Title IX. Rather, this question is the subject of an unresolved circuit split.[72] OSU's citation to the

---

[68] *Brown v. United States*, No. 2:16-CV-0358, 2017 WL 2378375, at *5 (S.D. Ohio June 1, 2017) (quoting *Gabelli v. SEC*, 133 S. Ct. 1216, 1220 n.2 (2013)); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) (Fraudulent concealment tolls limitations period until "a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.").
[69] *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 474 (6th Cir. 2013).
[70] *Id*.
[71] *Lozano*, 408 F. Supp. 3d 861, 900; *see also King-White*, 803 F.3d at 764 (discussing doctrine of fraudulent concealment, noting outcome of statute of limitations analysis might have been different in the case had plaintiff alleged that district or school officials actively concealed existence of causes of action).
[72] *See* Title IX–Relief Available, 1 Education Law § 4:5; *Canty v. Old Rochester Regional School Dist.*, 54

unpublished decision in *Hart,* decided on summary judgment, is not binding;[73] *Hart's* reliance on the Supreme Court case of *Barnes v. Gorman* is suspect because *Barnes*, which was not a Title IX case, is incompatible with the Supreme Court's decision in *Franklin*, which broadly allowed "all available remedies" under Title IX.[74] This Court can and should consider the rationale espoused within and adopted by other district courts, refusing to restrict remedies available under this broad Act, and explaining that punitive damages are available in cases of "ongoing egregious violations" where an institution demonstrated "complete indifference."[75] Because a reasonable jury could find that situation here, *see* ¶¶ 20, 206, 427, the Court should deny OSU's motion to dismiss Plaintiffs' punitive damages claim.

## CONCLUSION

Taking Plaintiffs' allegations as true, as the Court must, dismissal is precluded.[76] OSU's concealment of its role in heightening the risk of Plaintiffs being assaulted rendered the true cause of their injuries undiscoverable until within two years of the first filing of the claims. Additionally, or alternatively, OSU's intent to conceal and active effort to mislead, which are apparent from the Complaint, justify tolling the statute of limitations here. This Court must deny OSU's motion to dismiss and permit Plaintiffs' claims to go forward.

---

F. Supp. 2d 66, 137 Ed. Law Rep. 246 (D. Mass. 1999) (discussing the split in the courts, adopting the *Oyster River Co-op* position that punitive damages may be appropriate in rare cases).

[73] *Hart v. Paint Valley Local Sch. Dist.*, 2002 WL 31951264 (S.D. Ohio Nov. 15, 2002) (granting summary judgment for defendants on plaintiffs claim for punitive damages under Title IX and §1983, citing, *e.g.*, *Barnes v. Gorman*, 536 U.S. 181 (2002).

[74] See *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 72 (1992).

[75] *Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F. Supp. 2d 66, 70 (D. Mass. 1999) (denying motion to dismiss plaintiff's claims for punitive damages under Title IX, discussing law and rationale); *Doe v. Oyster River Co-op. School Dist.*, 992 F. Supp. 467, 483 n.17 (D.N.H. 1997); *see generally*, Doc. 157, and ¶¶ 20, 431, 666.

[76] *Kehoe Component Sales Inc.*, 933 F. Supp. 2d at 1016 ("[T]he determination of when a cause of action accrues is to be decided by the trier of fact."); *see also In re Arctic Express*, 636 F.3d at 802 ("whether a plaintiff has exercised reasonable diligence is generally a factual question reserved for the jury [except when] the facts are so clear that reasonable minds cannot differ as to whether the plaintiffs exercised reasonable diligence.").

Respectfully Submitted,

/s/ *Simina Vourlis*
Simina Vourlis,
The Law Office of Simina Vourlis
856 Pullman Way
Columbus, OH 43212
(614) 487-5900
(614) 487-5901 fax
svourlis@vourlislaw.com

Rex A. Sharp
Larkin Walsh
Sarah T. Bradshaw
SHARP LAW, LLP
4820 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 5th day of August 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system that will send a notice of electronic filing to all counsel of

record.

/s/ *Sarah T. Bradshaw*